E-FILED
Thursday, 06 September, 2018 09:42:31 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COMTECH HOLDINGS, INC., an Illinois corporation, d/b/a XCELL MECHANICAL SERVICES, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-1062 |
| v. | ) ) | |
| BRUNER CORPORATION, an Ohio corporation, | ) ) ) | Judge James E. Shadid |
| Defendant. | ) | Magistrate Jonathan E. Hawley |

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion to Strike Affidavit (Doc. 29). Defendant filed a Memorandum in Opposition to the Motion to Strike (Doc. 30). For the reasons set forth below, the Motion to Strike (Doc. 29) is DENIED.

### BACKGROUND

This is a contract action brought in diversity by Plaintiff, Comtech Holdings, Inc. ("Comtech") seeking monetary recovery for labor, materials, and services provided to Defendant, Bruner Corporation ("Bruner"). Plaintiff has moved for summary judgment. Doc. 25. In support of their Opposition to the Motion for Summary Judgment, Defendant attached two affidavits. Plaintiff now moves to strike the Affidavit of Tony Furst on the ground that it directly conflicts with prior sworn testimony. Doc. 29, p.1.

Both parties agree that Bruner contracted with Comtech to purchase boilers for an Energy Center in a John Deere plant. Bruner contends that Comtech made design errors that caused serious damage in the boiler system, and that some of the subsequent work performed by Comtech to remedy that damage should be considered within the scope of the original boiler

1

contract. Doc. 27, pp. 5–11. Comtech contends that all modifications to the boiler system after its original boiler installation were separate transactions from the initial purchase order, and denies any obligation to correct its prior work. Doc. 25, pp. 7–8. The affidavit itself primarily concerns whether Comtech was responsible for blowdown piping and low water cutoffs ("LWCOs") that caused damage and malfunction in the boiler system.

## LEGAL STANDARD

Where an affidavit in support of a motion for summary judgment is in conflict with prior sworn testimony, courts should disregard the affidavit. *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995)). However, not all discrepancies between deposition testimony and an affidavit's contents constitute direct conflict. Relevant new information discovered after the deposition or earlier testimony that is ambiguous or incomplete may explain differences between the deposition and the affidavit without requiring the court to disregard the affidavit. *Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 488 (7th Cir. 2007) (citing *Adelman-Tremblay v. Jewel Co.*, 859 F.2d 517, 520–21 (7th Cir. 1988); *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602–03 (7th Cir. 1999)). Courts must determine whether such differences are "plainly incredible" or whether they merely create a credibility issue for trial. *Id.* Where they are not plainly incredible, the Court need not disregard the affidavit with regard to the motion for summary judgment.

## ANALYSIS

Plaintiff alleges that there are five occasions where the affidavit explicitly contradicts the deposition. Each is addressed in turn below.

*1. Affidavit Paragraph 14*

Mr. Furst stated in his affidavit that Waldinger Corporation ("Waldinger") installed the problematic low water cut off ("LWCO") piping under Comtech's "specific direction." Doc. 29, p. 1. Plaintiff claims this contradicts Mr. Furst's deposition testimony where he stated that Waldinger, not Comtech, installed the piping. Doc. 25, Exh. 3, p. 10. Defendant claims that these statements do not contradict each other; in the affidavit, Mr. Furst says that Comtech designed the piping and provided specific direction to Waldinger, and Waldinger installed it. Doc. 30, p. 2. Both the deposition and the affidavit state that Comtech was involved in the design of the piping, without claiming Comtech installed it. Doc. 25, Exh. 3, p. 14; Doc. 27, Exh. 1, ¶¶ 13–14. Thus, there is no contradiction regarding Paragraph 14 of Mr. Furst's affidavit.

*2. Affidavit Paragraphs 15 and 16*

Plaintiff claims that Paragraphs 15 and 16 of Mr. Furst's affidavit attribute LWCO problems to "work performed by Comtech," while his deposition attributes those problems to "the design and/or installation of the blowdown lines." Doc. 19, p. 2. However, Mr. Furst's affidavit does not attribute LWCO problems directly to Comtech in Paragraphs 15 and 16. Rather, Mr. Furst describes how the design of the blowdown pipes caused extreme pressure surges that damaged the LWCO float chambers. Doc. 27, Exh. 1, ¶¶ 15–16. This is consistent with his deposition testimony that "it was the configuration of the blowdown piping that was causing the low water cutoff malfunctions." Doc. 25, Exh. 3, p. 25. Again, there is no contradiction between the affidavit and Mr. Furst's prior sworn testimony.

*3. Affidavit Paragraph 17*

Mr. Furst claimed in Paragraph 17 of his affidavit that even after Comtech replaced the problematic imploding float LWCOs with probe-style units, the boilers would shut down when

the blowdown pressure surge occurred. Doc. 27, Exh. 1, ¶ 17. In his deposition, Mr. Furst testified that the float LWCOs ceased to implode when Comtech replaced them with probes. Doc. 25, Exh. 3, p. 39. Then, Mr. Furst was asked "And so any of the problems there with the low water, by putting probes in instead of floats, things were functioning properly, correct?" *Id*. Mr. Furst responded in the affirmative. *Id.* Plaintiff claims that this admission that "things were functioning properly" clearly contradicts his allegation that the pressure surge problem remained. Doc. 29, p. 2. While these two statements are facially different, the question was ambiguous; the question could either be asking whether the LWCOs themselves were functioning properly or whether the full boiler system was functioning properly. It is not "plainly incredible" that Mr. Furst was answering a question specifically regarding the LWCOs, given the ambiguity of the question. *See Patton*, 480 F.3d at 488. Paragraph 17 is therefore not directly contradicted by prior sworn testimony.

### 4. Affidavit Statements Regarding Boiler Sequencing

Plaintiff argues that the Mr. Furst blames Comtech in his affidavit for start-up and boiler sequencing problems but disclaimed any awareness of such problems in his deposition. Doc. 29, p. 2. Plaintiff does not cite any statements in the affidavit or deposition to support this claim. The affidavit does not contain the words "start-up" or "sequencing." The affidavit does allege that many materials provided by Comtech ("Boiler Wizard" software, non-return valves, deaerator control, thermistors, flue gas recirculation system, and blank-off plates) caused continuing shutdowns of the boilers and conflicts with John Deere. Doc. 27, Exh. 1, ¶¶ 18–25. Mr. Furst was never asked about most of these materials during his deposition, other than saying that he was unaware whether the purchase order specified U.S. standard rather than metric thermistors.

4

Doc. 25, Exh. 3, pp. 35–36. As such, his deposition testimony does not directly conflict with his affidavit.

### *5. Affidavit Paragraph 29*

Mr. Furst concludes his affidavit by stating that the work required under Purchase Order 35460195 was only necessary because Comtech failed to adequately perform the work required under the initial purchase order. Doc. 27, Exh. 1, ¶ 29. Plaintiff claims that this is "irreconcilable with Mr. Furst's prior deposition testimony," without citing to specific deposition testimony. Doc. 29, p. 2. In his deposition, Mr. Furst claimed that at the time of the boiler modifications, he did not have copies of the original purchase order, and that he did not know what the scope of that order was. Doc. 25, Exh. 3, p. 18. He also said that as of February 8th, 2016, when he commissioned the work on a time and materials basis, he assumed that there was no erroneous design by Comtech. *Id.*, p. 19.

In his deposition, Mr. Furst was not asked questions regarding his present-day understanding of the purchase order's scope or the responsible party for the defects that led to Purchase Order 35460195. Rather, he was asked about his understanding at the time he issued purchase orders in February 2016. Paragraph 29 is not directly contradicted by Mr. Furst's prior sworn testimony.

## CONCLUSION

None of the statements that Plaintiff claimed contradicted prior testimony rose to the level of a direct contradiction under settled case law. *See Patton*, 480 F.3d at 488. Although the affidavit and the deposition contain some differences, these may be explained by ambiguous or incomplete earlier testimony. *See Aviles*, 859 F.2d at 603. Plaintiff's Motion to Strike is therefore DENIED.

Signed on this 6th day of September, 2018.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge