UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| COMTECH HOLDINGS, INC., an Illinois corporation, d/b/a XCELL MECHANICAL SERVICES, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 17-cv-1062-JES-JEH<br>) |
| BRUNER CORPORATION, an Ohio corporation, | )<br>)<br>) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 25). Defendant filed a Memorandum in Opposition to the Motion for Summary Judgment (Doc. 27). For the reasons set forth below, the Motion for Summary Judgment (Doc. 25) is DENIED.

### BACKGROUND

This is a contract action brought in diversity by Plaintiff, Comtech Holdings, Inc. ("Comtech") seeking monetary recovery for labor, materials, and services provided to Defendant, Bruner Corporation ("Bruner").

The following facts are undisputed. Comtech contracted to provide boilers to Bruner for an Energy Center at the John Deere plant in Rock Island, Illinois. That initial $2,586,200.00 contract between Bruner and Comtech has been fully paid. Doc. 25, p.1. Subsequent to the original boiler contract, Bruner requested that Comtech perform a number of modifications to the boilers and related parts, on a time and materials basis. Comtech generated invoices regarding that subsequent work. Bruner has partially paid one of those invoices, and has not paid the rest.

1

Bruner concedes that all except the partially paid invoice, Invoice 7933, were not part of the initial purchase order for the original boilers. Doc. 27, p. 2. Without considering interest for late payment, the remaining balance on Invoice 7933 is $75,399.45. Doc. 25, ¶ 11. The remaining recovery sought by Plaintiff for the other invoices totals $46,258.47, not counting the interest they seek on the late payments. *Id.* at ¶ 36. Defendant concedes that neither the original contract nor any of the subsequent purchase orders contained a "pay when paid" clause that would allow Defendant to delay payment until John Deere pays Bruner for completion of the Energy Center contract. *Id.* at ¶¶ 34–35.

Several facts remain in dispute. First, the most significant dispute is over whether the invoices in this case are the result of a prior breach by Comtech in the initial boiler contract. Essentially, Bruner contends that the work performed by Comtech after the Initial Purchase Order was not "part of" that order, in that the work was not listed or anticipated in that purchase, but that it was only later necessitated by Comtech's failure to adequately perform the original contract. Doc. 27, p. 4.[1] In support of this assertion, Bruner has submitted an affidavit from an engineer at the site, detailing a series of errors Comtech made in the boiler system under the Initial Purchase Order that required costly corrective work.[2] Doc. 27, Exh. 1. Bruner claims that, because it fully paid the original contract, and Comtech's proceeding work was necessitated by its breach of that original contract, that it has no obligation to pay Comtech for the repairs. Doc. 27, p. 5. Comtech maintains that the work performed after the initial boiler contract was entirely

---

[1] Plaintiff has failed to file a reply to Defendant's Additional Material Facts. To the extent that Defendant's Additional Material Facts are supported by the record, they are deemed admitted. See Local Rule 7.1(D)(3)(a)(5).

[2] Specifically, the affidavit alleges that Comtech designed the blowdown pipe lines defectively (¶ 14–15), that Comtech's float-style low water cutoffs imploded (¶ 16), that Comtech provided no functioning non-return valves (¶ 18), that Comtech's provided control software was faulty (¶ 19), and that Comtech defectively designed the flue gas recirculation system (¶¶ 23–24). Doc. 27, Exh. 1.

separate from the initial contract, the work was contracted to be paid under that understanding, and that it must therefore be paid separately. Doc. 25, pp. 5–8.

Second, Bruner disputes the veracity of the amounts listed on the invoices. Although Bruner agrees that it contracted with Comtech for the work performed under the invoices in question, and that the work was to be performed on a time and materials basis, Bruner contends that the accuracy of the listed materials and work hours are at issue. To support this, Bruner points to a signature line on the invoices for the customer that certifies the work and materials were to the customer's satisfaction, and notes the absence of a signature on any of the invoices. Doc. 27, p. 12.

Third, the parties dispute whether Bruner's withholding of payment is "unreasonable and vexatious" pursuant to the Illinois Interest Act, such that Bruner would owe Comtech five percent prejudgment interest on the withheld payments. Doc. 25, p. 9; 815 ILCS 205/2. Comtech claims that, given the record, there is no factual dispute that Bruner has no bona fide defense for its nonpayment. Doc. 25, p. 10. Bruner, on the other hand, contends that Comtech's prior breach of contract entitles Bruner to withhold payment, and that no money is owed. Doc. 27, p. 9.

The Plaintiff, Comtech, now seeks summary judgment to collect on all the unpaid invoices, based on its assertion that there is no dispute of fact as to the scope of the Initial Purchase Order, the fact of the time and materials basis for the invoices, and the unpaid status of those invoices.

## LEGAL STANDARD

Summary judgment is proper where the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant bears the initial burden of production, showing to the court

what materials in the record demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The role of the judge in resolving a motion for summary judgment is not to weigh the evidence for its truth but to determine whether sufficient evidence exists that a jury could return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, in order to survive a motion for summary judgment, the non-movant must show specific facts that demonstrate the existence of genuine issues for trial. *Id.* The Court will construe the record "in the light most favorable to the non-movant" in deciding whether the case involves genuine issues of fact requiring a trial. *Payne v. Pauley*, 337 F.2d 767, 770 (7th Cir. 2003).

## ANALYSIS

Plaintiff's motion for summary judgment is based on three arguments: 1. the unpaid invoices were not "part of" the original boiler contract, 2. there is no "pay when paid" precondition in the contracts at issue, and 3. there are no bona fide defenses precluding the collection of prejudgment interest. The Court will address each argument in turn.

*(1) The Relation of the Unpaid Invoices to the Original Contract*

Plaintiff correctly asserts that Defendant has conceded the unpaid invoices (other than Invoice 7933) were not "part" of the Initial Purchase Order. Doc. 25, p. 7. However, it is clear from the record that Defendant has not conceded that payment is due on those invoices; Defendant claims that the work underlying the unpaid invoices was only required to be performed because of Plaintiff's failure to satisfactorily complete the Initial Purchase Order. Doc. 27, p. 4. In other words, Defendant concedes that all but one of the invoices involved work that was not specifically addressed by the Initial Purchase Order, but only because Defendant

4

could not have anticipated in advance what kind of repair work exactly would be necessary when Plaintiff breached the terms of the Initial Purchase Order. *Id.*, p. 10.

In support of its argument that Plaintiff breached the initial contract, Defendant presented an affidavit of a senior engineer who oversaw the project, Tony Furst. Doc. 27, Exh. 1. Mr. Furst stated that Comtech provided low water cut-offs and designed a blowdown separator and a common blowdown line at the rear of the boilers, as well as a method for piping the low water cut-offs into a manifold. Doc. 27, Exh. 1, ¶¶ 12–14. Mr. Furst also stated that the design of the blowdown line (with the pipes elevated above the blowdown manifold) caused water to pool in the manifold, cool down, and then flash violently when a new surge of superheated blowdown water came in contact with it. *Id.* at ¶ 15. The ensuing pressure surge caused the float-style low water cut-offs to implode, which would shut down the boiler system. *Id.* at ¶ 16. Even when Comtech replaced the float-style low water cut-offs with probe-style units that could not implode, the boilers would shut down when the pressure surged due to rapid fluctuations in the water level. *Id.* at ¶ 17. Additionally, Mr. Furst states that Comtech did not provide functional non-return valves, functional boiler control software, or a functional flue gas recirculation system, all of which were expected under the Initial Purchase Order. *Id.* at ¶¶ 18, 19, 23.

Construing the record in the light most favorable to the non-movant (here, the Defendant), there is a genuine issue of material fact as to whether Comtech breached its initial contract, and whether the ensuing repair work was covered under the Initial Purchase Order. Plaintiff attached the Initial Purchase Order to its Motion for Summary Judgment. Doc. 25, Exh. 4. Although neither party has referenced these provisions, the Initial Purchase Order itself contains potentially relevant "General Conditions":

> "9. All material and/or equipment furnished under this Purchase Order shall be guaranteed by the Seller against defects, and the Seller agrees to replace without

5

charge to Purchaser said material and equipment, or remedy any defects, latent or patent, not due to ordinary wear and tear, and not due to improper use or maintenance, which defects may develop within the guarantee period set forth in applicable plans and specifications, or one year from delivery, whichever is later.

…

13. Should the Seller at any time default in the performance of any obligation of this Purchase Order … or fail in any other respect to prosecute the performance of this Purchase Order in a manner satisfactory to Purchaser, … Seller shall thereupon be deemed to have committed an act of default of this Purchase Order, and shall be in default of this Purchase Order. Upon Purchaser's good-faith determination that an act of default has occurred, Purchaser shall notify Seller by certified mail of Seller's default under this Purchase Order. If the Purchaser determines that the Seller has not remedied and cured the default or defaults within five days from the date of Seller's receipt of such notice, then the Purchaser may … procure … appropriate, material, equipment and/or services similar to those so terminated and Seller shall be liable to Purchaser for any excess costs for such similar materials, equipment, and/or services resulting to Purchaser as a consequence of Seller's default."

Doc. 25, Exh. 4.

Given the affidavit and deposition testimony of Mr. Furst, and given the language of the Initial Purchase Order, this Court cannot conclude that there is no dispute of material fact with regard to the affirmative defenses of payment and prior breach.

*(2) The "Pay When Paid" Precondition*

The parties agree that there was no "pay when paid" clause that would have allowed payment to be delayed on either the Initial Purchase Order or any of the invoices in question until Bruner received payment from John Deere for the overall Energy Center project. Doc. 25, ¶¶ 34–35; Doc. 27, p. 2. In its Opposition to the Motion for Summary Judgment, Defendant makes no argument that its third affirmative defense—that it was "only required to make payment to Comtech when Bruner received payment from John Deere"—has merit, and points to no evidence to support it. With respect to the third affirmative defense in Defendant's Answer (Doc. 14, p. 4), there is no dispute of material fact, and the affirmative defense fails as a matter

6

of law. Because that affirmative defense is insufficient, the Court strikes it from the pleadings. See Fed. R. Civ. P. 12(f)(1).

*(3) The Availability of Prejudgment Interest*

Plaintiff claims that it is entitled to summary judgment against Defendant with regard to prejudgment interest on the unpaid invoices. Doc. 25, p. 11. Plaintiff cites the Illinois Interest Act, 815 ILCS 205/2, and claims that there is no dispute over Plaintiff's status as a creditor, the unpaid nature of the invoices, and the non-payment's status as "unreasonable and vexatious." Doc. 25, pp. 9–10. According to Plaintiff, there is no genuine dispute that Defendant has no bona fide defenses for non-payment, and thus that its conduct is unreasonable and vexatious. *Id.* at p. 10.

Whether or not the Plaintiff is entitled to prejudgment interest is a question of damages appropriate only after a finding that Plaintiff is entitled to some principal monetary award. Defendant has established material issues of fact on the underlying claim for damages, and has also shown some dispute with the correct amounts due under the invoices; pointing to the absence of Defendant's signature on the invoices, Defendant claims the hour and material calculations are of dubious veracity. Doc. 27, p. 12.

Prejudgment interest begins to accrue when it becomes "due and capable of exact computation." *Santa's Best Craft, L.L.C. v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 355 (7th Cir. 2010) (applying the Illinois Interest Act and quoting *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 250 (Ill. 1982)). As there has been no finding on the underlying claim, the amount in question is as yet undetermined, and a ruling on prejudgment interest would be premature. Thus, Plaintiff is not entitled to summary judgment with respect to the collection of prejudgment interest.

## CONCLUSION

Defendant has demonstrated that there is material in the record giving rise to genuine disputes of material fact. Taking the evidence on the record in the light most favorable to the Defendant, a reasonable finder of fact could find in Defendant's favor with regard to the affirmative defenses of prior breach and payment.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. 25) is DENIED.

Signed on this 18th day of September, 2018.

/s James E. Shadid
James E. Shadid
Chief United States District Judge
